CASE 83.—ACTION BY J. D. GROVER AGAINST THE BLUE GRASS TRACTION COMPANY.—December 7, 1909.

# Blue Grass Traction Co. v. Grover

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Highways—Defects—Liability.—A county is not liable for injuries to a traveler on a defective county highway; the county being an arm of the state government exercising a part of the powers of the state, created by the Legislature for that purpose.

2. Bridges—Defects—Liability.—A contract between a county, railroad company, and a traction company, which provided for a change in the location of a county highway crossing the railroad track at grade, and which required the railroad and traction companies to construct an overhead bridge at their own expense, and which bound the traction company to keep the bridge in repair, contemplated that the county should be free from the burden of maintaining the bridge, and the traction company only assumed to do for the county what it otherwise would have been compelled to do, and was not liable for injuries to a traveler caused by a defect in the bridge.

3. Highway—Defects—Liability.—Though the county authorities or its representatives may be indicted for maintaining a public nuisance, occasioned by maintaining a defective highway, or bridge forming a part thereof, yet there is no liability for damages to persons injured thereby.

ALLEN DUNCAN, STOLL BUSH and BRADLEY for appellant.

B. M. LEE and JAMES BRADLEY for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Previous to the building of the Blüe Grass Traction line between Georgetown and Lexington, the turnpike between those places crossed the railroad track of the Cincinnati Southern Railroad at grade. When the traction company was about to build its line, it was agreed between it, the railroad company, and the Fayette fiscal court to deflect the turnpike a little to one side and cross the railroad where it ran through a cut; the traction company agreeing to put up and maintain a bridge at this point free of cost to Fayette county, and Fayette county agreeing to maintain the turnpike from the points where it left the old line on each side to the bridge. The arrangement was carried out, the bridge was built; but the successor of the traction company failed to keep it in order, and by reason of its being out of order a valuable race mare belonging to J. D. Grover, while crossing over the bridge, had her foot to slip through the floor, and was injured about the knee in such a manner as, it is claimed, unfitted her for racing purposes. He brought this suit against the present traction company for the injury to his mare, and recovered a judgment for $5,000. The traction company appeals.

There was little controversy in the evidence as to the value of the mare; and, while the proof was conflicting as to the extent of her injuries, we cannot, under the proof, disturb the verdict on account of the amount of the damages found. The only material question in the case which it is necessary for us to consider is whether the traction company is liable to Grover for the injury to his mare. The turnpike was a county highway. It is well settled that the county is not responsible to a traveler on the highway who is injured by a defect in it. Moberley v. Carter County, 5 Ky. Law Rep. 694; Shephard v.

Pulaski Co., 18 S. W. 15, 13 Ky. Law Rep. 672. The bridge was a part of the county highway, and, unless the traction company became liable by reason of its contract with the fiscal court, or by some other fact shown in the case, then it is not liable to Grover for an injury to his mare while traveling on the public highway by reason of a defect in it. The contract referred to so far as material is as follows: "This contract made and entered into this the 31st day of March, 1902, by and between the Fayette fiscal court of Fayette county, Kentucky, as party of the first part and the Cincinnati, New Orleans & Texas Pacific Railway Company and the Georgetown & Lexington Traction Company, as parties of the second part, witnesseth: That for and in consideration of the mutual covenants, promises and agreements herein contained, it is hereby agreed: (1) That the party of the first part will consent and permit and does hereby consent and permit that the parties of the second part may remove the roadbed of the Georgetown and Lexington turnpike from where same is now located and place the said roadbed and the pike thereon upon the fills to be constructed by the parties of the second part, according to the plans and profiles which have heretofore been prepared and which have been and are now approved by the parties hereto; a copy of said plans and specifications is hereto attached and made a part hereof. * * * (2) That the parties of the second part hereby agree to construct the pike upon the fills and remove the pike as it is now located as well as to construct the proposed overhead bridge at their own proper cost and expense, and the Georgetown & Lexington Traction Company, its successors and assigns, agree to maintain said bridge at their own cost and expense, but this is not to be construed

as an agreement on the part of the parties of the second part to maintain or keep in repair or renew the metal on said pike so placed by them on said fill. It is agreed that all of said work shall be done under the supervision of the superintendent of Fayette county and according to the plans and profiles and specifications which have heretofore been prepared and approved by the parties hereto. * * * The old turnpike shall remain open to the public until the new road is completed and accepted by the fiscal court. The bridge is to be built and forever maintained by the Georgetown & Lexington Traction Company, and its successors and assigns, free of cost to Fayette county. The bridge shall not be less than (24) twenty-four feet wide in the clear and so constructed that the whole of the floor shall be level and suitable for public travel. It shall be forever maintained by the Georgetown & Lexington Traction Company, or whatever company that may own and operate the Georgetown & Lexington Electric Railway free of cost to Fayette county.''

It has been held that neither the county judge nor the justices composing the county court nor the road overseer, whose duty it is to keep the road in order, are liable in an action for damages to a traveler injured on the highway by reason of a defect in it. Wheatly v. Mercer, 9 Bush, 704; Hite v. Whitley Co. Court, 91 Ky. 168, 15 S. W. 57, 12 Ky. Law Rep. 764, 11 L. R. A. 122. It was also held in Coleman v. Baker, 111 Ky. 131, 63 S. W. 484, 23 Ky. Law Rep. 513, that a supervisor of roads is not responsible to a person injured by reason of the breaking down of a bridge on the county highway. In Moss v. Rowlett, 112 Ky. 121, 65 S. W. 153, 358, 23 Ky. Law Rep. 1411, the same rule was applied to a contractor who had

undertaken to keep the road in order in a county where the roads were maintained by taxation. The reason underlying these opinions is that the county is an arm of the state government exercising a part of the powers of the state, and created by the Legislature for that purpose. To hold that the county is not responsible for a defect in the highway, but that the contractor who agrees with the county to discharge the duty which the law places upon the county, is responsible to a traveler injured by a defect in the highway, would be to overlook the reason upon which the rule rests; for if such ability existed the county would be unable to make contracts for the keeping in repair of its highways on as reasonable terms as it can where it must only pay a reasonable price for the necessary work; because, if the contractor assumes the greater liability, he must necessarily take this into consideration in fixing the price for which he may do the work. We cannot see that there is any substantial distinction between this case and that of a contractor who agrees to keep the road in order as in Moss v. Rowlett. The traction company only undertook by the contract to keep the county bridge in repair, and thus relieve Fayette county of an expense which would otherwise fall upon it. What was in the minds of the contracting parties is not difficult to see. The fiscal court and the railroad company wished to get rid of the grade crossing with the dangers attendant upon it; but the fiscal court did not wish to assume the additional burden of maintaining the bridge. The traction company wished to avoid the danger attendant upon operating its cars over the grade crossing, and so the agreement was reached by which the railroad company bore a part of the

expense of making the change in the turnpike, and the traction company assumed the entire burden of maintaining the bridge. No duty was imposed by the contract on the railroad company as to building or maintaining the bridge, and it will be observed that in the second clause of the contract the traction company agrees to maintain the bridge at its own cost and expense, and in the last clause of the contract it is twice stipulated that the bridge is to be built and forever maintained by the traction company "free of cost to Fayette county." In other words, it is clear from the contract that what the parties had in mind was that Fayette county should be free forever from the burden of maintaining the bridge. It is simply a contract by which the traction company assumes to do for Fayette county what it would otherwise be required to do; and by this contract it assumes no greater liability than Fayette county was under. In maintaining the bridge it simply acts for Fayette county, and it is under no greater responsibility than it would be if, instead of contracting to keep the bridge in repair, it had contracted to keep that part of the pike in repair which led from the old pike to the bridge; for the bridge was an essential part of the pike, and a contract to maintain the bridge imposed no greater liability than a contract to maintain any other part of the pike. The fact that the bridge was over the track of the railroad company in no way affects its liability. The railroad company was not required to build the bridge. It did not build it, and, if Fayette county had built this bridge over the railroad track, the railroad company would have been in no wise responsible to Grover, if Fayette county had allowed it to get out of repair. The fact that the county made a contract with another to do

this work for it in no way affected the liability of the railroad company.

It is earnestly insisted that the defective bridge in the county highway was a public nuisance and that any one injured by a public nuisance may recover; but the bridge in question was no more a public nuisance than the bridge in the case of Moss v. Rowlett, or the defects in the other cases referred to, and this case cannot be distinguished from them on this ground. Any such defect in a county highway is a public nuisance, and, if a liability may be imposed on this ground here, it may be in all such cases. The county authorities or its representatives may be indicted for maintaining a public nuisance; but for reasons of public policy a liability for damages to persons injured thereby has not been imposed. Appellee relies upon the cases in which water companies have been held liable to the property owner for the loss of his property by fire due to their failure to maintain a sufficient water supply pursuant to their contracts made with the city. Graves Co. Water Co. v. Ligon, 112 Ky. 775, 66 S. W. 725, 23 Ky. Law Rep. 2149, and cases cited. But these cases rest upon the ground that the city in making the contract with the water company for water for fire protection contracted on behalf of its inhabitants and for their benefit. The city was under no obligation to furnish its inhabitants with a supply of water, and in furnishing a water supply the water company acted for itself, and not in the discharge of any obligation of the city to its inhabitants. Here the obligation to maintain the county highway rests primarily upon the county, and the traction company, when it undertook to maintain the bridge free of cost to Fayette county, simply undertook to do what Fayette county otherwise would

have been under obligation to do.  As Fayette county, if it had maintained the bridge, would have been under no obligation to pay appellee for the injury to his horse, such damages cannot be said to be reasonably within the contemplation of the parties when it was contracted that the traction company would maintain the bridge free of cost to Fayette county.  The case would be the same, if, by reason of the defect in the bridge, the rider had been thrown from the horse and killed.  To hold the traction company liable for such damages on a contract to maintain the bridge free of cost to Fayette county would be to extend the obligation of the contract beyond the fair and natural meaning of its terms.  We therefore conclude that the appellant is not liable for the injuries sued for.

Judgment reversed, and cause remanded for further proceedings consistent herewith.