CASE 75—ACTION BY BENJAMIN JOHNSON AGAINST CHARLES M. FLEM-
ING, COMMISSIONER, TO RECOVER PLAINTIFF'S SHARE OF MONEY
PAID INTO COURT.—(APRIL 28, 1899.)

# Johnson v. Fleming, Commissioner.

### APPEAL FROM FLEMING CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

DEPOSITS IN COURT—FAILURE OF COURT TO SELECT DEPOSITORY—LIA-
BILITY OF RECEIVER.

Held: Under Kentucky Statutes, section 411, providing that each
circuit court may select by order a bank as a place of deposit
for money paid into court, and that such bank shall execute bond,
where the court has failed to select a depository the receiver or
commissioner is liable only for negligence in the selection of a
bank for the deposit of money paid into court, or in leaving the
money there, and is not an insurer of the solvency of the bank
selected by him.

(This case was decided April 28, 1899, and marked not to be
reported, but is now ordered to be reported. See 21 R., 4; 50
S. W., 855.)

G. A. CASSIDY, JOSEPH PUMPHREY, W. G. DEARING, AT-
TORNEYS FOR APPELLANT.

The appellee as commissioner and receiver of the Fleming Cir-
cuit Court, received $482.90 for the appellant and deposited it
in the Exchange Bank of David Wilson & Co. The order of dis-
tribution was made January 18, 1896. The Exchange Bank
broke February 13, 1896. Said bank was a private bank owned
by David Wilson. We submit that the appellee was not diligent
in paying out this money. There were three daily mails to the
appellant's postoffice, only five and a half miles from where ap-
pellee resided, and he could have sent a check for the money
any day, which is the usual way to pay out money. The appellee
had no office in Flemingsburg, no place of business where ap-
pellant could find him. There was no order of court requiring
or directing him to put the money in bank. Section 411 of the
Code says that the court may designate, by order, a bank—State
or national—in which such money may be deposited, which shall
give bond with good security, &c. This was not done, but the

money was deposited in a private bank without any bond or security.

We claim that by the neglect of a plain duty and taking the law in his own hands, appellee has caused this loss to appellant. He has no right to part with the custody of the money, save at his own risk.

### AUTHORITIES CITED.

Ky. Stats., secs. 414, 411; Robinson v. Fleming, 90 D., 713; Wilson v. Mayer, 43 D., 719; Ficener v. Botts, 20 R., 633.

JNO. P. McCARTNEY, ATTORNEY FOR APPELLEE.

The facts are as follows:

By the sale of some land in a suit pending in the Fleming Circuit Court, the sum of $3,670.55 was realized and ordered to be distributed by the master commissioner of said court to the parties entitled thereto, the plaintiff being one of the number, his share being $482.90. The heirs being widely scattered, this money was, by the commissioner, on February 6, 1896, the same day it was received, deposited in the Exchange Bank of David Wilson & Co. Notice was sent by appellee to plaintiff to call and get his money. On February 13, 1896, said bank made an assignment for the benefit of its creditors, said fund being to the credit of appellee as commissioner. Said bank was, up to the time of its assignment, regarded as solvent in the community and as a safe depository for money, and was the bank in which appellee deposited his individual money.

We claim that appellee used reasonable care and diligence in the performance of his duty as commissioner, the same that he used or that any prudent person would use in transacting his own business, and is not liable for the loss of this money. The case was tried by a jury under proper instructions of the court as to appellee's care and diligence and liability, and the jury found that the appellee was not liable, and we submit that this finding should be affirmed.

### AUTHORITIES CITED.

Am. & Eng. Ency. of Law, vol. 27, pp. 155, 156; Lewis on Trust, vol. 1, p. 412; Gilmore v. Guenther, 4 Ky, Law Rep. 524.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

The appellee, Charles M. Fleming, was the master commissioner and receiver of the Fleming Circuit Court, and as

such received in January, 1896, a considerable sum of money,.
which he deposited as receiver in the Exchange Bank of
David Wilson & Co. This bank, at the time, was entirely
solvent, and good, but before the money was paid out it
failed. It is contended for the appellant that the appellee
is responsible for the money, although guilty of no negligence
in selecting the bank, or in leaving the money there. There
are many cases holding that the obligation of public officers
like appellee to keep safely the money committed to them
is absolute, without any condition, express or implied, and
nothing but its payment when required will exonerate the
officer. This rule seems to be largely based on the case of
U. S. v. Prescott, 3 How., 578, and some subsequent cases
in the Supreme Court of the United States following it;
but in U. S. v. Thomas, 15 Wall., 337, the authority of
these cases was greatly shaken, so that some of the judges
thought it would have been better to have overruled them
directly. The current of the latter cases is to the effect that
public officers, like other fiduciaries having the custody and
management of the property of others, are liable only for the
exercise of proper diligence and care. Thus, in the case last
referred to, it was said: "A public officer, having property
in his custody in his official capacity, is a bailee, and the rules
which grow out of that relation are held to govern the case."
"The general rule of official obligation as imposed by •law
is that the officer shall perform the duties of his office hon-
estly, faithfully, and to the best of his ability. This is the
substance of all official oaths. In ordinary cases to expect
more than this would deter upright and responsible men
from taking office. This is substantially the rule by which
the common law measures the responsibility of those whose
official duties require them to have the custody of property,
public or private. If, in any case, a more stringent obliga-

tion is desirable, it must be prescribed by statute, or exacted by express stipulations." In York Co. v. Watson, 15 S. C., 1, a county treasurer depositing the public funds in a savings bank of good standing, was held not liable for their loss by the subsequent failure of the bank; the court saying: "If it would be wrong in principle to hold a private trustee responsible for a loss which no care of his could have prevented, would it not be equally wrong to hold a public officer responsible under like circumstances? The liability of a bonded officer . . . arising from official duty . . . is governed by the principles of the common law." This case is followed and approved in State v. Houston, 78 Ala., 576. In Wilson v. People, 19 Colo., 199, 34 Pac., 944, the clerk of a court who in that State discharges duties similar to those imposed on appellee deposited the money in his custody in a bank of reputed solvency, acting as a prudent man would. The bank afterwards failed, and the money was lost. Holding that the clerk was not responsible, the court said: "We believe the true rule is that a public officer who receives money by virtue of his office is a bailee, and that the extent of his obligation is that imposed by law; that, when unaffected by constitutional or legislative provisions, his liability is measured by the law of bailment." The same rule was adopted in Tennessee, where a county trustee had deposited the money in a bank of undoubted standing, which had afterwards failed, so that the money was lost without fault on his part. See State v. Copeland (Tenn. Sup.) 34 S. W., 427. The case of People v. Faulkner, 107 N. Y., 477, 14 N. E., 415, was substantially similar to this case, and in a well-considered opinion the court held the officer not responsible. , See, also, Cumberland Co. v. Pennell, 31 Am. Rep., 284; and Healdsburg v. Mulligan (Cal.) 45 Pac., 337. But it is insisted that a different rule prevails in this State

as to receivers, because of our statutes. The provisions re-
lied on are as follows:

"Each circuit court may select and designate by order a
bank, State or national, as a place of deposit for moneys
paid into court. Such bank shall before receiving the de-
posit, execute bond, with good sureties, to be approved by
the court, in a penal sum to be fixed by the court, payable
to the Commonwealth, and conditioned to pay all moneys de-
posited by the receiver or commissioner upon any check
drawn by him under order of court.

"It shall be the duty of the receiver, or commissioner, act-
ing as such, to receive into his custody and safely keep all
moneys paid to him under order of court, and if any depos-
itory has been selected by the court, he shall, as soon as prac-
ticable deposit such moneys therein. Money paid into the
court shall be paid out by the commissioner or receiver on
the written order of the court, attested by the clerk and not
otherwise."

"The court shall, when practicable, require the depository
to pay interest on the deposit, and such interest shall be
devoted, under proper rules or orders of the court, to the
payment of costs in each case."

Kentucky Statutes, sections 411, 412, 415.

The purposes of these provisions was not to add to the
liabilities of the receiver, but to provide for the greater se-
curity of the funds and to make them interest-bearing. It
will be observed that the receiver is charged with no duty
in regard to the appointment of the depository. This is
left entirely to the circuit court, and is a matter of discre-
tion with him; he may or may not make a selection, as he
may deem best. After he had acted, the receiver is charged
with no duty until the depository gives bond. Until all this
is done, the receiver must take such care of the money com-

ing to his hands as good judgment and diligence require. He is not responsible for the non-action of his superior officer, over whom he has no control. He would not be heard to complain of the action of the circuit court, and, being a subordinate officer, would not be expected to look after matters left by law to the discretion of his superior.

Under proper instructions, the jury found in favor of appellee on the question of negligence. We think the evidence supports their finding. The appliances of a bank afford so much better security for money against fire and theft that business men almost universally put their money in bank, rather than keep it themselves. For the receiver to have kept this money himself would have been much greater evidence of negligence than the putting of it in a bank universally recognized as solvent. Appellant himself had in the same bank to his own credit a much larger sum than that for which he proposes to hold the receiver responsible, and the evidence is very persuasive that, if he had drawn the fund sued for from the receiver; it would simply have been placed to his credit with his other funds in the same bank, and he would be now in the same situation, substantially, as he is. Judgment affirmed.