## Stephens v. City of Ludlow, et al.

(Decided September 24, 1914.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1.  Municipal Corporations—Treasurer—Selection of Depository.—A city of the fourth class is not prohibited by sections 3554 and 3555

of the Kentucky Statutes, prescribing the powers and duties of the city treasurer, from designating by ordinance the depository in which the treasurer must keep the funds of the city.

2. Municipal Corporations—Treasurer—Selection of a Depository.— A city council may, without express power so to do, select a depository for the city funds, unless the treasurer is given authoriay by the statute to make the selection.

3. Municipal Corporations—Liability of Treasurer.—If the treasurer selects the depository in which the funds are to be kept, he is responsible on his bond for the integrity and solvency of the institution, but if the depository is selected by the city council and the treasurer directed by it to keep the funds of the city in the depository so selected, the treasurer is not liable for the solvency or the integrity of the depository.

JACKSON & WOODWARD for appellant.

JOEL H. WARD and MEYERS & HOWARD for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, Stephens, is the treasurer of the city of Ludlow, a city of the fourth class. He brought this suit asking an injunction against the members of the city council to restrain them from interfering with him in the disposition of the funds of the city and to restrain them from putting into effect an ordinance, the pertinent sections of which read as follows:

"Section 1. That the city of Ludlow will receive bids from the three banks of the city of Ludlow for the privilege of being the city depository. Said bids shall be deposited with the city clerk not later than 7:30 o'clock p. m., Thursday, March 19, 1914, and shall specify the rate of interest that will be paid by the said depository upon daily balances, and upon time deposits, and the rate of interest that will be charged the city upon loans.

"Section 2. The terms upon which bids shall be made are as follows, to-wit: The privilege will be awarded for a term of two years; interest on daily balances shall be computed on the hundreds dollars deposited, fractions thereof to be disregarded, no interest to be paid on balances less than five hundred dollars and to be payable monthly.

"Time deposits shall be for a period of not less than three months, and interest payable every three months.

"Loans shall not exceed at one time twenty-thousand dollars. All loans in excess of that amount shall be subject to special arrangement.

"The successful bidder shall furnish the bond of some acceptable surety company in the sum of $25,000 for the faithful discharge of its obligations as city depository.

"The General Council reserves the right to reject any and all bids.

"Section 3. It shall be the duty of the city treasurer and all other city officers having in their possession, custody or control moneys belonging to the city of Ludlow, to deposit said moneys in the city depository designated under or in accordance with the terms of this ordinance."

The circuit court sustained a demurrer to the petition, and the treasurer prosecutes this appeal.

Section 3554, of the Kentucky Statutes, after directing that a city treasurer shall be elected for a term of two years by the city council, or by the voters of the city if it is so prescribed by ordinance, provides that:

"The person elected treasurer, before entering into the discharge of his duties, shall take an oath to faithfully perform all the duties of the office; and said person shall execute a bond to said city, with one or more sureties, to be approved by the board of council, covenanting that he will faithfully keep and account for, according to law, all funds that may come to his hands as treasurer; that he will at any time, when called upon by the board of council, settle his accounts as treasurer and pay over any money in his hands due the city to any person designated by the board of council, and that he will faithfully perform the duties of his office."

Section 3555 further provides that "It shall be the duty of the treasurer to receive and safely keep all money belonging to the city, and to pay the same as directed by order of the board of council; but he shall only pay out money upon warrants drawn by the mayor or chief executive and countersigned by the clerk of the board of council. He shall keep a fair and accurate account of all his receipts and disbursements, showing when, from whom, and to whom, and for what purpose, and on what account, such moneys were received or paid, and shall exhibit the same; and on the first regular meeting of each month send his monthly report to the city council, whose duty it shall be to have same credited by the finance committee. * * * He shall perform such other duties as may be required of him by ordinance not

inconsistent with this act and shall receive such compensation for his services as the said board may provide.''

It is argued in behalf of the treasurer that as he is responsible on his bond for the safe keeping of the funds of the city, he has the right to select the bank or depository in which the funds shall be kept, and the council has no power to interfere with or control his actions in depositing the funds in such bank as he may select, or to direct in what bank the city funds shall be deposited, in the absence of express legislative authority conferring upon the city council this power.

It is further argued that the sections of the statute cited do not confer on the council the power attempted to be exercised by it, and, therefore, he was entitled to the relief sought.

The statute does not in terms grant the council the right to select a depository for the treasurer, nor is it necessary to the exercise of this authority by the council that there should be an express grant of power. If the Legislature had, as it might have done and as it did in respect to the treasurers of certain classes of cities, given the treasurer the right to select the depository in which public funds should be placed, the city council would of course have no right, under ordinary conditions, to control his selection. But the Legislature, in defining the powers and duties of the city council and treasurer of fourth class cities, did not either expressly give to the treasurer the right to select a depository or withdraw from the council the authority to designate one. It merely provided in this particular that it should be the duty of the treasurer ''to receive and safely keep all money belonging to the city'' and ''perform such other duties as may be required of him by ordinance not inconsistent with this act.''

This general direction that the treasurer shall safely keep all moneys belonging to the city and faithfully account for the same, is not taken away by the ordinance giving the council the right to select a depository. The ordinance does not undertake to interfere with the right of the treasurer to safely keep and account for the funds that come into his hands. It merely directs him in what depository the funds shall be kept. No one of the other duties imposed upon the treasurer by the statute is touched by this ordinance. The power and

duty of the treasurer under the ordinance is the same as it was before its enactment except that the city funds must be placed and kept in the depository selected by the city.

It is argued that as the treasurer is bound at all hazard for the safe keeping of the funds, he and not the city should have the right to select the depository in which they should be kept. There would of course be great force in this argument if the treasurer were an insurer of the solvency of the depository selected by the city, but he is not. If the treasurer himself selected a depository and the funds of the city were lost by any wrong-doing on the part of any of its officers or from other causes the treasurer would be liable to the city for the funds, although he might have exercised the highest degree of care in selecting the depository. When, however, the selection of the depository is taken out of his hands and he is directed by the city to keep its funds in an institution selected by it, the city and not the treasurer assumes responsibility for the integrity and solvency of the institution so selected. Commonwealth v. Godshaw, 92 Ky., 435.

. The city of course is vitally concerned in the safe keeping of its funds, and it is not to be doubted, even if there were no restrictions or limitations on the right of the treasurer to control the funds, that the city would have the right to require him to keep them in a safe institution. The city does not lose all right of supervision over its funds merely because they have been placed in the hands of an officer of the city for safe keeping. The treasurer of the city is a public official, and the city council, having general control of the administration of the affairs of the city, has the authority within the limitations of its charter, to fix and control the duties of public officers in any manner not inconsistent with law or the charter rights of the officers. And for the purpose of enabling the city, through its council, to exercise all legitimate authority over city officials, the powers conferred by the charter should be liberally and reasonably construed so as to allow the council, as the legislative branch of the city, the largest measure of discretion and authority consistent with the power conferred by the charter, so that it may not be unreasonably restrained in its efforts to conserve the best interests of the people.

This case furnishes a fair example of the benefits that may arise from giving the council reasonable control over the conduct of the city officers, as it seems to be conceded that under the ordinance the city will receive interest on funds that the treasurer, although otherwise compensated, has heretofore been appropriating to his own use, and besides will be in a position to secure, on good terms, money when it becomes necessary to borrow it.

Upon the whole case, we think it was within the power of the council to enact the ordinance assailed, and the judgment is affirmed.